UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

KEENAN PARKER,

Petitioner,

- versus -

SUPT. S. WENDERLICH,

Respondent.

MEMORANDUM
AND ORDER

14-CV-5896 (JG)

**A P P E A R A N C E S**

    KEENAN PARKER
      # 09-A-4055
      Southport Correctional Facility
      236 Bob Masia Drive
      P.O. Box 2000
      Pine City, New York 14871-2000
      *Petitioner Pro Se*

    KENNETH P. THOMPSON
      King County District Attorney's Office
      350 Jay Street
      Brooklyn, New York 11201
  By:  Keith Dolan
      *Attorneys for Respondent*

JOHN GLEESON, United States District Judge:

Pursuant to 28 U.S.C. § 2254, Petitioner Kennan Parker applies for a writ of habeas corpus, challenging his conviction in New York Supreme Court, following a jury trial, of Murder in the Second Degree. For the reasons set forth below, the petition is denied.

BACKGROUND

A.     *The Offense Conduct*

           The evidence at trial established that on September 13, 2007, at approximately

12:00 P.M., at 22 Clifton Place in Brooklyn, Parker shot and killed Lawrence Sumpter.  Parker

was charged with one count of Murder in the Second Degree, and two counts of Criminal

Possession of a Weapon in the Second Degree.  N.Y. Penal Law §§ 125.25(1); 265.03(1)(b), (3).

Parker was tried before a jury in the New York Supreme Court, Kings County.  At trial, Parker

was represented in part by counsel, and in part proceeded *pro se*.

      1.     *The State's Case*

           Carmel Harding testified that around noon on September 13, 2007, she was

talking to Lawrence "Rab" Sumpter and others in front of 22 Clifton Place, next door to her

home in Brooklyn.  Tr. 58-60, 63-67.[1]  Harding noticed Parker, her brother Eric and others,

talking or arguing on the stairs of 42 Clifton Place, about 13 houses away.  Tr. 67-68, 104.

Harding had known Parker for over 20 years because he had been raised with her son, and had

spoken to him just two days earlier.  Tr. 60-63.

           Sumpter was walking down the block toward 42 Clifton Place when Harding saw

Parker jump off the stoop and shoot at him.  Tr. 67, 70-74.  According to Harding, Sumpter had

not done anything to provoke the attack and had no bad intentions towards Parker.  *Id.*  When

Sumpter ran back towards Harding, Parker continued shooting at him.  *Id.*  Harding, for her part,

started to run inside 22 Clifton Place, which was under renovation.  Tr. 73.  She heard about five

shots before she entered the building.  Tr. 74.  Sumpter ran into the building behind her, but he

was shot and fell down near the top of the steps.  Tr. 73-77.  Parker then appeared at the top of

---

[1]       The citation "Tr. __" notes the pages of the trial transcript.  Minutes of other proceedings are indicated as necessary.

the stairs, about four or five feet from Harding. Parker was holding a gun, and cursed at Sumpter, "Motherfucker, I got you now." Tr. 76-78. As Harding ran away, she heard more gunshots and called 911. Tr. 79, 106.

Luis Gonzalez, a carpenter who at the time of the incident was working in another building on Clifton Place, testified that upon hearing three gun shots he looked out the third floor window and saw Parker chasing another man. Tr. 252-54, 257, 261. The man being chased by Parker ran towards a doorway. Tr. 253-56, 261, 274. Gonzalez saw Parker pull out a .38-caliber snub-nose gun and fire three shots at the victim, while the victim was at the bottom end of the stairs, by the doorway. *Id.* Parker emptied the gun at the victim; Gonzalez heard the weapon make a "click-click" sound. Tr. 256-57. Gonzalez first heard Parker fire three shots, then saw Parker fire three more shots. *Id.*

Gonzalez testified that Parker put the empty gun into his pocket, then reached behind his back and drew a second gun — a small, nickel or chrome-plated 9mm or .45-caliber pistol. Tr. 253, 257-58, 261, 274-75. The victim was already inside the building when Parker ran inside behind him. Tr. 259. Gonzalez heard three more shots, and a "tumble," which sounded like someone falling down the stairs. Tr. 253, 275. Then Parker said, "I got this motherfucker," and looked around before riding away on a bicycle. Tr. 253.

Police Officer Evita Poole testified that she arrived at 22 Clifton Place in response to a radio report of gunfire at about 11:53 A.M. Tr. 109-11. She observed Eric Harding standing over Sumpter, who had been shot numerous times. Harding was trying to help Sumpter, telling him to "Get Up. Get Up." Tr. 112-13. Carmel Harding then told the police that Parker had shot Sumpter. Tr. 80-81. Detective Anthony D'Amato recovered a discharged 9mm shell casing from the floor inside 22 Clifton Place. Tr. 115-16, 148-51, 154-55. Detectives Timothy Duffy

and Ronald Johnson went to 22 Clifton Place, interviewed witnesses, and attempted to locate Parker after the shooting. Tr. 193-96, 213-16.

Weeks later, on October 6, 2007, Duffy and another detective were driving along Willoughby Avenue in Brooklyn when they spotted Parker standing on a corner and approached him. Tr. 196-98, 216-17. Duffy told Parker that he looked like a wanted person, but if he was not that individual, then he would be released soon. Tr. 197-98. Parker cooperated. *Id.* While being driven back to the 88th Precinct, Parker claimed that it was all Duffy's fault because Duffy had left a violent, three-time loser on the street. Tr. 202-03. Duffy asked Parker who he meant, and Parker said Lawrence Sumpter. *Id.* Parker also said that Sumpter had gotten what he deserved. Tr. 203. At the precinct, Parker stated that the entire case was based on the "white guy across the street from where it happened," and that person would not testify. Tr. 204-05. The police conducted a lineup with Parker. Tr. 205, 219-25. Prior to the lineup, Parker stated, "It's not like I killed Kennedy," and also asked, "How many murders am I being charged with?" Tr. 238-39. Carmel Harding and Gonzalez each viewed the lineup separately, and both identified Parker as the shooter. Tr. 81-82, 227-30, 269-70.

Detective James Valenti examined the three bullets recovered from Sumpter's autopsy and the shell casing recovered at the scene of the shooting. Tr. 178-80, 184. The three bullets had been fired from at least two different guns. Tr. 181. Two were .38 caliber lead bullets, and were consistent with being fired from a revolver. Tr. 190. However, Valenti could not ascertain if they were fired from the same revolver. Tr. 181. The jacketed, hollow-point bullet was a 9mm, and would have been fired from a semi-automatic pistol. Tr. 187-88, 190.

2.    *The Defense Case*

Parker was the only defense witness at trial.  He testified that he had known Sumpter since he was 12 and Sumpter was an older teenager.  Tr. 322.  At the time of the shooting, Parker was not on good terms with Sumpter, whom he described as "selfish" and "jealous."  Tr. 332-33.  According to Parker, Sumpter had him falsely arrested for a murder that Sumpter had actually committed, and for which Parker was ultimately acquitted.  Tr. 332-34. Parker testified that Sumpter had committed numerous violent acts prior to September 13, 2007, but the only such act he had witnessed personally was the shooting of Ronald Matthews, a friend of Sumpter's.  Tr. 330-32.  Parker also claimed that he had seen Sumpter possess various firearms at an apartment on Clifton Place.  Tr. 331.

Parker admitted that he shot Sumpter on September 13, 2007, but claimed that it was a mutual "shootout" in which Sumpter had fired first.  Tr. 335-40.  Prior to the shootout, Eric Harding had stopped Parker on the street, as a distraction, and asked Parker why he was bringing a lawsuit that would put people in jail.  Tr. 335-36, 365, 381, 383.  As they were speaking, Parker claimed that he could see Sumpter approaching from behind in the reflection of Eric Harding's sunglasses.  Tr. 335-37, 349.  Parker then saw Sumpter draw a gun, but it jammed.  *Id.*  Once this happened, Parker pulled his own weapon and tried to use Eric Harding as a shield.  *Id.*  When Sumpter fired two shots at Parker, Parker fired back.  *Id.*  Parker explained that his gun had belonged to his grandmother, who had been a police officer, but it was not snub-nosed.  Tr. 348-49.  According to Parker, he had had the gun since 1989, but kept it in the house, and this was the only day he carried it with him.  *Id.*

According to Parker, Sumpter ran across the street, firing at Parker, "shooting backwards like in the movie theater."  Tr. 340, 352.  Parker stated he did not have an opportunity

to return fire because he only had "five slugs" in his "six shooter," whereas Sumpter had "an automatic, fully loaded" 9mm pistol. Tr. 352-53. By the time Sumpter reached the stairs of 22 Clifton Place, Parker had "let go of three, because I knew I had two left. I have five out of the six." Tr. 353. Parker said he returned fire at Sumpter because he feared for his life. Tr. 340-41.

At trial, Parker testified that he was chasing Sumpter, aiming at him, trying to hit him, but at another point, Parker stated that he was not chasing Sumpter. Tr. 348, 351. He claimed that he followed Sumpter into 22 Clifton Place because "[m]y mind snapped. This man tried to kill me not only once, but this is the second time. He just tried to give me 50 years in jail." Tr. 341. Parker also claimed that he was afraid that if he turned away, he would have been shot in the back. Tr. 351-52. According to Parker, Sumpter fired nine or ten shots at him and Eric Harding picked up the empty casings. Tr. 379, 381-82. Parker also claimed that Sumpter had tried to kill him three times, and that Sumpter wanted to kill Parker because Parker "had him" and Sumpter was going to jail. Tr. 378-80, 382.

Parker testified that when he first shot at Sumpter he did not know that he had hit him. Tr. 353-54. Sumpter fell and got back up. *Id.* Parker then shot Sumpter again. *Id.* This time Parker "knew [Sumpter] was hit because his body flew." *Id.* Sumpter dropped his gun and fell down. Tr. 342. Parker admitted that he did not leave once Sumpter had dropped his gun, testifying that, "At that point in time, that's when I picked his gun up, and that's when I shot him with his own gun." *Id.* Parker testified that he was "fresh out" of ammunition, but Sumpter "had enough in his clip." Tr. 355. Parker said he thought Sumpter might have had a "vest" on. Tr. 354. Parker then cursed at Sumpter, put the two guns in his pockets, and left when the police did not arrive. Tr. 362, 372.

Parker admitted that he shot Sumpter while Sumpter was unarmed, and that the bullet he fired from Sumpter's gun was the bullet that went through Sumpter's heart. Tr. 358. Parker said he "wasn't trying to be precise. I wanted to hit the intended target." Tr. 359. However, Parker denied that he intended to kill Sumpter, because if he had wanted to kill Sumpter, there was more ammunition in Sumpter's gun. Tr. 354-55. Parker denied that he made the remark "like I shot Kennedy" at the police station; he only told the police "the way you were looking all over Brooklyn, it was like Kennedy got shot." Tr. 375-76. Parker also denied saying that Sumpter got what he deserved, and claimed that he asked the police why they were looking for him, as Sumpter was an active informant and the police had a number of other murders to investigate. *Id.*

B.      *The Charge, Verdict, and Sentence*

After the defense rested, the court submitted, in the alternative, one count each of Murder in the Second Degree, Manslaughter in the First Degree (as a lesser-included offense), and Criminal Possession of a Weapon in the Second Degree. Tr. 569, 571, 574, 582. The court also submitted the defense of justification as to the murder and manslaughter counts. Tr. 563. The jury convicted Parker of Murder in the Second Degree and thus, pursuant to the court's instructions, did not reach the manslaughter or weapon possession counts. Tr. 597. On July 20, 2009, the court sentenced Parker to a term of imprisonment of twenty-five years to life on the murder conviction. Sentencing Minutes of July 20, 2009 at 24.

C.      *The First § 440 Motion*

Prior to perfecting his direct appeal, Parker brought his first *pro se* motion, dated June 17, 2010, to vacate his judgment of conviction pursuant to New York Criminal Procedure Law ("CPL") § 440.10. ECF No. 5-1, at 3-10. Parker claimed that the evidence presented to the

Grand Jury established that he only shot the victim with a .38-caliber gun, but the State had presented evidence at trial that Parker also used a second gun, a 9mm pistol, to shoot the victim. Parker also claimed that because the trial court instructed the jury on the justification defense, the murder charge should not have been submitted to the jury. In addition, Parker argued that he had represented himself during much of the trial, and when he allowed his attorney to give the defense summation, counsel did not mention self-defense, and instead argued that the jury should convict Parker of a lesser charge. Thus, Parker alleged, he had been denied the effective assistance of trial counsel.

On August 11, 2010, the New York Supreme Court summarily denied Parker's motion, finding it procedurally barred pursuant to CPL § 440.10(2)(b) because Parker's judgment of conviction was pending on appeal, but sufficient facts appeared in the trial record to permit appellate review of Parker's claims. *See* Decision and Order, *People v. Keenan Parker*, No. 9940/2007, at 2 (Sup. Ct. Kings Co., Aug. 11, 2010) (Del Giudice, J.) ("First § 440 Decision"), ECF No. 5-1 at 20-22. In addition, the court denied the motion pursuant to CPL § 440.10(4)(b) because Parker's moving papers failed to contain the requisite sworn allegations of fact. *Id.* Parker did not seek review of the denial of this motion. Pet. at 5, 9-10.

D.      *The Direct Appeal*

Parker appealed his judgment of conviction to the Appellate Division, Second Department ("Appellate Division"). In a brief filed on or about January 7, 2011, Parker's appellate counsel raised the following claims:

> Point I: [Parker] was denied due process of law, his right to be present and his right of confrontation when the court (a) precipitously banished him from the courtroom for alleged disruptive behavior; (b) in response to defense counsel's assurances that [Parker] was ready, refused even to consider allowing him to return to the courtroom, and; (c) failed to

"establish methods of communication linking [Parker] with the courtroom."

Point II: In granting the full extent of the prosecution's *Sandoval* [*People v. Sandoval*, 34 N.Y.2d 371 (1974)] application, the court failed to exercise any discretion and deprived [Parker] of due process and a fair trial.

Point III: The court deprived [Parker] of his right to a jury trial by precipitously dismissing a juror who was suitable to continue serving.

ECF No. 5-2 at 1-50 (quotations in original). Parker subsequently filed a *pro se* supplemental brief. ECF No. 5-2 at 52-68. In his *pro se* supplemental brief, Parker argued that the trial court had impermissibly amended the indictment and/or changed the theory of prosecution by submitting to the jury a second-degree weapon possession count. According to Parker, the State had amended its theory of prosecution by arguing to the jury that Parker had used two guns to kill Sumpter.

On February 14, 2012, the Appellate Division affirmed Parker's judgment of conviction. *People v. Parker*, 938 N.Y.S.2d 444 (2d Dep't 2012). The court found that the trial court had providently exercised its discretion in removing Parker from the courtroom, as Parker had forfeited his right to be present due to his disruptive behavior. *Id*. It observed that Parker was removed after the trial court had issued several admonitions, which Parker ignored as his outbursts continued. *Id*. The Appellate Division found further that given Parker's prior behavior, the trial court did not err in denying Parker's applications to return to the courtroom. *Id*. Furthermore, the Appellate Division continued, there was no error in the trial court's *Sandoval* ruling or in its discharge of the juror. *Id*. Finally, the Appellate Division concluded, Parker's contention that the trial court improperly added a second degree criminal possession of a weapon charge was "academic." *Id.*

Appellate counsel then sought leave to appeal the Appellate Division's decision to the New York Court of Appeals. A judge of the New York Court of Appeals denied this application on June 13, 2012. *See People v. Parker*, 19 N.Y.3d 966 (2012) (Jones, J.).

E.     *The Second and Third § 440 Motions*

On March 8, 2012, Parker again moved, *pro se*, in the Supreme Court, Kings County, to vacate his judgment of conviction pursuant to CPL § 440. *See* ECF No. 5-2 at 78-88. Parker claimed that the trial court did not administer the "truthfulness oath" to the prospective jurors, as required by CPL § 270.15(1)(a), to insure that they would answer the voir dire questions truthfully. *Id.*

On April 30, 2012, the Supreme Court, Kings County, summarily denied Parker's motion, finding it procedurally barred pursuant to CPL § 440.10(2)(c) "because sufficient facts appear on the record to have permitted adequate review upon appeal but no such appellate review occurred owing to the defendant's unjustifiable failure to raise such ground upon his appeal." Decision and Order, *People v. Keenan Parker*, No. 9940/2007, at 2 (Sup. Ct. Kings Co., Apr. 30, 2012) (Del Giudice, J.) (citations omitted), ECF No. 5-3 at 38. On May 25, 2012, Parker sought leave to appeal, and on September 20, 2012, the Appellate Division denied that application. Affirmation of Keith Dolan ("Dolan Aff.") ¶ 20, ECF No. 5 (citing *People v. Keenan Parker*, Decision and Order on Application, No. 2012-05361 (Sept. 20, 2012) (Hall, J.)).[2]

Parker then brought a third *pro se* CPL § 440 motion in the Supreme Court, Kings County, dated August 14, 2012, to vacate the judgment of conviction based upon his claim that the courtroom was unconstitutionally closed to the public when Parker's wife was apparently

---

[2]     Neither Parker's May 25, 2012 application nor the Appellate Division's September 20, 2012 denial were included in the State's response to my October 16, 2014 Order to Show Cause. *See* Dolan Aff. ¶ 3. As a result, I rely exclusively on Mr. Dolan's affirmation for the veracity of these facts.

asked to temporarily leave because there was insufficient seating space to accommodate all of the potential jurors for voir dire. *See* ECF No. 5-3 at 41-49 (omitting exhibits).

On September 10, 2012, the New York Supreme Court summarily denied Parker's third motion to vacate the judgment. As with the previous § 440 motions, the Supreme Court found that the motion was procedurally barred, pursuant to CPL § 440.10(2)(c) "because sufficient facts appear on the record to have permitted adequate review upon appeal but no such appellate review occurred owing to the defendant's unjustifiable failure to raise such ground upon his appeal." Decision and Order, *People v. Keenan Parker*, No. 9940/2007, at 2 (Sup. Ct. Kings Co., Sept. 10, 2012) (Del Giudice, J.) ("Third § 440 Decision") (citations omitted), ECF No. 5-3 at 53. Additionally, the court found the application barred under § 440.10(3)(c) because Parker had failed to raise this issue in his previous § 440 motion. [3] *Id.* On November 7, 2012, Parker *pro se* sought leave to appeal, and on March 13, 2013, the Appellate Division denied that application. *See* Dolan Aff. ¶ 24 (citing *People v. Keenan Parker*, Decision and Order on Application, No. 2012-09662 (Mar. 13, 2013) (Hall, J.)). [4]

F.    *The Coram Nobis Petition*

In a *pro se* application dated June 25, 2013, Parker moved for a writ of error *coram nobis* in the Appellate Division. *See* ECF No. 5-3 at 54-77. Parker claimed that he was denied the effective assistance of appellate counsel because his attorney did not challenge on appeal the trial court's decision to temporarily exclude Parker's wife from the courtroom during voir dire, due to seating constraints for the potential jurors, resulting in a violation of his right to

---

[3]       Under CPL § 440.10(3)(c), a court may deny a motion to vacate a judgment when "[u]pon a previous motion made pursuant to [CPL § 440], the defendant was in a position adequately to raise the ground or issue underlying the present motion but did not do so."

[4]       Neither Parker's November 7, 2012 application nor the Appellate Division's March 13, 2013 denial were included in the State's response to my October 16, 2014 Order to Show Cause. *See* Dolan Aff. ¶ 3. As a result, I rely exclusively on Mr. Dolan's affirmation for the veracity of these facts.

a public trial. *Id.* In addition, Parker claimed that appellate counsel provided ineffective assistance because he did not argue that trial counsel was ineffective for failing to object to the procedure. *Id.*

In response to a request by the Appellate Division, appellate counsel submitted an affirmation stating that he considered a § 440 motion to be the proper vehicle to raise the courtroom closure claim. Affirmation of David P. Greenberg ("Greenberg Aff.") ¶ 11, ECF No. 5-3 at 104. According to appellate counsel, the trial record indicated that Parker had attempted to pass a note to his wife, which prompted a reprimand from the trial court. *Id.* "This suggests the possibility that defense counsel might have found her presence in the courtroom an unnecessary distraction." *Id.* Appellate counsel continued that absent any indication that Parker and his trial counsel ever discussed the matter, or that Parker asked his attorney to protest, "it would have been difficult to fault counsel, pre-*Presley* [*Presley v. Georgia*, 558 U.S. 209 (2010)] for failing to object to what was apparently a common practice in New York prior to the *Presley* decision." *Id.* ¶ 12. Finally, appellate counsel noted that the evidence of Parker's guilt was "strong," and Parker could not show prejudice. *Id.* ¶ 13.

In a Decision and Order dated February 19, 2014, the Appellate Division denied Parker's petition for a writ of error *coram nobis*, finding that Parker "ha[d] failed to establish that he was denied the effective assistance of appellate counsel." *People v. Keenan Parker*, 980 N.Y.S.2d 786 (2d Dep't 2014) (citations omitted). Parker moved for permission to appeal to the New York Court of Appeals, and the Chief Judge of that court denied that request on August 5, 2014. *People v. Parker*, 23 N.Y.3d 1066 (2014) (Lippman, C.J.).

G.    *The Instant Petition*

Following the denial of his *coram nobis* motion, Parker filed this petition for a writ of habeas corpus on October 6, 2014.  He puts forward four grounds for relief: (1) his trial counsel was ineffective due to her failure to argue justification during summation; (2) the trial court violated Parker's Sixth Amendment rights by denying him a public trial; (3) the Assistant District Attorney improperly spoke about two guns during trial when only one gun was mentioned in the Grand Jury proceeding; and (4) the trial court improperly amended the indictment to include a second weapon.  I heard oral argument on February 26, 2015, at which Parker appeared *pro se* via teleconference from the prison in which he is currently incarcerated.

DISCUSSION

A.    *Standard of Review*

1.    *Exhaustion*

A federal judge may issue a writ of habeas corpus freeing a state prisoner, if the prisoner is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).  However, the exhaustion requirement, codified at 28 U.S.C. § 2254(b) and (c), obligates a federal habeas petitioner to exhaust state judicial remedies before seeking relief from a federal court.  To exhaust state remedies, a petitioner must "fairly present" his federal constitutional claims to the highest state court with jurisdiction over them.  *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (internal quotation marks and alterations omitted); *Daye v. Attorney General of New York*, 696 F.2d 186, 191 (2d Cir. 1981) (*en banc*).  This requirement "springs primarily from considerations of comity" between the federal and state systems and affords the state system "the opportunity to pass upon and correct alleged violations of its prisoners' federal

rights." *Duncan*, 513 U.S. at 365 (quoting *Picard v. Connor*, 404 U.S. 270, 275 (1971) (internal quotation marks omitted)).

2. *Procedural Default and Adequate and Independent State Grounds*

A federal habeas judge may not issue a writ of habeas corpus if an adequate and independent state-law ground justifies the prisoner's detention, regardless of the federal claim. *Edwards v. Carpenter*, 529 U.S. 446, 454-55 (2000) (Breyer, J. concurring) (citing *Wainwright v. Sykes*, 433 U.S. 72, 81-88 (1977)). One such ground is a state-law procedural default. *See Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Where there has been actual and explicit reliance upon procedural default to dispose of a claim in state court, there is an "adequate and independent state ground" for the judgment, prohibiting federal habeas review. *See Harris v. Reed*, 489 U.S. 255, 261-63 (1981); *Levine v. Comm'r of Corr. Servs.*, 44 F.3d 121, 126 (2d. Cir. 1995); *see also Coleman*, 501 U.S. at 750 (noting the state's interest in "channeling the resolution of claims to the most appropriate forum, in finality, and in having an opportunity to correct its own errors").

In the event that a state court rejects a claim as procedurally defaulted, the claim may only be considered on federal habeas review upon a showing of: (1) cause and actual prejudice, or (2) upon a showing that a miscarriage of justice will result if the claim is not reviewed. *See Coleman*, 501 U.S. at 750; *Teague v. Lane*, 489 U.S. 288, 298 (1989). A petitioner may establish cause by showing "that the factual or legal basis for a claim was not reasonably available to counsel, . . . or that some interference by officials . . . made compliance impracticable." *Coleman*, 501 U.S. at 753 (ellipses in original) (internal quotation marks omitted) (quoting *Murray v. Carrier*, 477 U.S. 478, 492 (1986)). To satisfy the prejudice requirement, the alleged error must have worked to the petitioner's "actual and substantial

disadvantage, infecting his entire trial with error of constitutional dimensions." *Torres v. Senkowski*, 316 F.3d 147, 152 (2d Cir. 2003). If the petitioner cannot show cause, the failure to raise the claim in an earlier petition may nonetheless be excused if he can show that a fundamental miscarriage of justice would result from a failure to entertain the claim, *i.e.*, "that he is actually innocent of the crime for which he has been convicted." *Dunham v. Travis*, 313 F.3d 724, 730 (2d Cir. 2002) (citing *Schlup v. Delo*, 513 U.S. 298, 321 (1995) and *Murray*, 477 U.S. at 496). This fundamental miscarriage of justice exception to the procedural default rule "is 'extremely rare' and should be applied only in 'the extraordinary cases.'" *See Sweet v. Bennett*, 353 F.3d 135, 142 (2d Cir. 2003) (quoting *Schlup*, 513 U.S. at 321-22).

B.    *Parker's Claims for Relief*

1.    *Trial Counsel's Failure to Argue Justification During Summation*

Parker asserts that trial counsel was constitutionally ineffective because she did not argue justification in her summation. Pet. at 9; *see* N.Y. Penal Law § 35.00. He previously raised this claim in his first, pre-appeal § 440 motion. Pet. at 4. The New York Supreme Court denied this motion pursuant to § 440.10(2)(b) because the claim could be raised in Parker's then-pending appeal since sufficient facts appeared in the record to permit appellate review. *See* First § 440 Decision at 2. Indeed, the entirety of the trial summation is contained in the trial record.

Despite the New York Supreme Court's admonition, Parker did not raise the claim on direct appeal in either appellate counsel's main brief or in Parker's *pro se* brief. Parker concedes that he did not seek to appeal the denial of the § 440 motion, because he "did not know of appealing procedure for 440 motions" and was "attacked by officers in Attica." Pet. at 5, 9-10.

As previously stated, to exhaust state remedies, a petitioner must "fairly present" his federal constitutional claims to the highest state court with jurisdiction over them. *Duncan*, 513 U.S. at 365; *Daye*, 696 F.2d at 191; *Gadsden v. Lee*, No. 12-CV-4204 (JG), 2013 WL 3938500, at *2 (E.D.N.Y. July 30, 2013). Parker failed to do this.

Yet even if a claim in a federal habeas petition has not been exhausted, a federal court may deem it exhausted if there are no avenues available in the state judicial system for reviewing the claim. *See* 28 U.S.C. § 2254(b)(1) (petition shall not be granted unless "the applicant has exhausted the remedies available in the courts of the State" or "there is an absence of available State corrective process"); *Aparicio v. Artuz*, 269 F.3d 78, 90 (2d Cir. 2001) ("[A] federal court may theoretically find that there is an absence of available State corrective process . . . if it is clear that the unexhausted claim is procedurally barred by state law and, as such, its presentation in the state forum would be futile." (internal quotations omitted)). If such a claim can no longer be exhausted, a federal court must deem them procedurally defaulted. *See id.*; *Sweet*, 353 F.3d at 140.

In this case, the state court expressly relied upon CPL § 440.10(2)(c) in denying Parker's first § 440 motion. *See* First § 440 Decision at 2-3. This statute provides that a state court must deny a motion to vacate a judgment when

> [a]lthough sufficient facts appear on the record of the proceedings underlying the judgment to have permitted, upon appeal from such judgment, adequate review of the ground or issue raised upon the motion, no such appellate review or determination occurred owing to the defendant's . . . unjustifiable failure to raise such ground or issue upon an appeal actually perfected by him . . . .

CPL § 440.10(2)(c). In other words, CPL § 440.10(2)(c) prohibits collateral attacks on a conviction when the defendant unjustifiably failed to raise an on-the-record issue on direct

appeal. *People v. Cuadrado*, 9 N.Y.3d 362, 364-65 (2007); *People v. Cooks*, 67 N.Y.2d 100, 104 (1986). Moreover, the Second Circuit has held that reliance on this particular statute is an adequate and independent basis upon which to deny federal habeas review. *See Clark v. Perez*, 510 F.3d 382, 393 (2d Cir. 2008) (district court erred in holding that the state court's application of CPL § 440.10(2)(c) did not constitute an adequate state procedural bar to habeas petition). By declining to raise this claim on direct appeal, Parker failed to exhaust his state remedies, and the court to which he would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred. *See Coleman*, 501 U.S. at 735 n.1; *Jackson v. Conway*, 763 F.3d 115, 143-44 (2d Cir. 2014); *Sweet*, 353 F.3d at 140.

Thus, I find that Parker's claim is unexhausted but procedurally defaulted. A court may review such a claim only if the petitioner demonstrates (1) cause and actual prejudice, or (2) that failure to consider the claim would result in a miscarriage of justice, *i.e.*, that he is actually innocent. *See Bousley v. United States*, 523 U.S. 614, 622 (1998); *Jackson*, 763 F.3d at 144 n.27. Parker asserts that he was unfamiliar with how to appeal from a CPL § 440 motion, that he did not have enough time to prepare his *pro se* brief, and that he was attacked by state correction officers. Pet. at 5, 9-10. Parker's lack of familiarity with the law is not sufficient cause to excuse his default. *See Coleman*, 501 U.S. at 753 ("'cause' under the cause and prejudice test must be something *external* to the petitioner, something that cannot fairly be attributed to him") (emphasis in original); *Washington v. James*, 996 F.2d 1442, 1447 (2d Cir. 1993) ("Ignorance or inadvertence will not constitute 'cause.'"); *accord White v. West*, No. 04-CV-02886 (RRM), 2010 WL 5300526, at *19 (E.D.N.Y. Dec. 6, 2010) ("Petitioner's allegation of ignorance of the law . . . [is] insufficient to allege adequate cause to excuse the procedural default . . . ."); *Burroughs v. Griffin*, No. 13-CV-1505 (TJM/ATB), 2014 WL 3779007, at *1

(N.D.N.Y. July 31, 2014) ("[P]ro se petitioner's ignorance of the law does not justify excusing [his] failure to comply with the rules governing habeas petitions.").

Moreover, Parker's threadbare allegations that he lacked enough time, and was abused by prison officers, do not constitute cause for his failure to include this claim in either appellate counsel's main brief, or in Parker's *pro se* brief to the Appellate Division. *See generally Magar v. Parker*, 490 F.3d 816, 819-20 (10th Cir. 2007) (finding allegation that default was caused by prison officials who put petitioner in restrictive housing unit was insufficient because petitioner provided no information suggesting that prison officials effectively barred petitioner's access to the courts); *Short v. Jones*, 246 Fed. App'x 586, 590-92 (10th Cir. 2014) (petitioner did not explain how alleged difficulties and delay were attributable to prison officials, and without more, court was unable to find that petitioner had shown cause for default); *Glover v. Burge*, No. 05-CV-0393 (VEB), 2007 WL 9183249, at *4-5 (W.D.N.Y. Oct. 22, 2007) (petitioner did not allege that prison officials interfered in the filing of his brief, or somehow prevented him from timely filing it; his conclusory allegations of a prison lockdown were insufficient to excuse the procedural default). As Parker has not demonstrated cause for his procedural default, I need not address the issue of prejudice. *See, e.g.*, *McCleskey v. Zant*, 499 U.S. 467, 502 (1991).

Likewise, there is scant evidence of a fundamental miscarriage of justice here, *i.e.*, that Parker is actually innocent. The Supreme Court has made clear that this is an "extremely rare" exception to be applied only in extraordinary circumstances. *Schlup*, 513 U.S. at 321. Parker's petition puts forth no "exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence [] that was not presented at trial." *Id.* at 324; *Doe v.*

*Menefee*, 391 F.3d 147, 161 (2d Cir. 2004) (recognizing that *Schlup* "limited the type of evidence on which an actual innocence claim may be based").

To the contrary, Parker's testimony provides direct evidence that he killed Sumpter after he was wounded and unarmed. *See* Tr. 351-60. Parker's own petition defeats any claim of actual innocence. Pet. at 6 (("I admitted to having a 38 revolver[.] [T]hat weapon was not the death instrument[.] [T]he deceased dropped his weapon during the shoot out[.] I picked it up and shot it at him[.] The deceased died from 9mm gun shot wound[.]"). Other evidence at trial – including two eyewitnesses identifying Parker as the killer, one of whom claimed that the shooting was unprovoked, *see* Tr. 70-74, evidence from the autopsy, and Parker's own testimony showing that he did not like the victim – support the jury's determination that Parker was not acting in self-defense.

For the reasons set forth above, I conclude that since no valid exception applies, Parker's Sixth Amendment claim is procedurally barred and not subject to habeas review. In any event, Parker's claim that trial counsel failed "to argue self defense during summation" is without merit. Pet. at 9. Trial counsel argued at length in summation that the prosecution had failed to carry its burden to disprove the justification defense beyond a reasonable doubt.[5] Tr. 428. Noting "what is also at issue in this case is the issue of self-defense," Tr. 441, counsel repeatedly insisted that Parker had reasonably believed it was necessary to shoot Sumpter. Tr. 443-45, 447-48, 455-56. To pick one example, counsel directed the jury to "ask yourself, did they disprove the defense of justification beyond a reasonable doubt? And I submit the answer is no." Tr. 457. She further explained that the defense of justification also applied to

---

[5] Under New York law, once the defense of justification has been placed in issue by the trial evidence, it is the State's burden to disprove it beyond a reasonable doubt. *See People v. Mariano*, 956 N.Y.S.2d 291, 293 (3d Dep't 2012); N.Y. Penal Law §§ 25.00, 35.00.

manslaughter, and implored the jury to find that the prosecution had not disproven the justification defense as to that charge as well. Tr. 457-58.

2.  *Right to a Public Trial*

Parker contends that the trial court violated his Sixth Amendment right to a public trial when it temporarily closed the courtroom to make room for prospective jurors during voir dire. Pet. at 10-11. Though trial counsel did not lodge an objection, and appellate counsel did not raise the claim on appeal, Parker raised the claim in two post-conviction motions: his third § 440 motion and his *pro se* petition for a writ of *coram nobis*. The instant petition maintains that the New York Supreme Court and the Appellate Division, respectively, erred in denying these applications.

a.  *The Third § 440 Motion*

In his third § 440 motion, Parker asserted that the trial court deprived him of his right to a public trial when it "insisted that defendant[']s wife could not be a part of the proceedings and during jury selection due to not having enough room." *See* ECF No. 5-1 at 43. On September 10, 2012, the New York Supreme Court summarily denied Parker's motion on two state procedural grounds: (1) pursuant to CPL § 440.10(2)(c), "because sufficient facts appear on the record to have permitted adequate review upon appeal but no such appellate review occurred owing to the defendant's unjustifiable failure to raise such ground upon his appeal;" and (2) pursuant to CPL § 440.10(3)(c) because Parker had failed to raise this issue in his previous § 440 motion. Third § 440 Decision at 2. The Appellate Division denied Parker's application for leave to appeal from that decision. *See* Dolan Aff. ¶ 24 (citing *People v. Keenan Parker*, Decision and Order on Application, No. 2012-09662 (Mar. 13, 2013) (Hall, J.)).

The transcript shows that during jury selection on April 28, 2009, the court addressed Parker and "Miss Parker" before bringing the panel of prospective jurors into the courtroom:

> And I introduced myself to your wife. Miss Parker, you will have an absolute right to be present in the trial at all times.
>
> Now, the only issue that may come about is that during the jury selection process we just don't have enough seats for everybody.
>
> So just follow the instructions of the court officers.
>
> What we'll do as soon as a seat opens up, we'll bring you in. It's not that you're barred from anything. It's just that physically we don't have enough room.

Voir Dire Minutes of Apr. 28, 2009 at 2. Defense counsel offered no objection to the court's statement or proposed procedure. *Id.* at 2-3. The parties then discussed various legal issues, *id.* at 3-33, after which a panel of prospective jurors entered the courtroom for voir dire. *Id.* at 34.

Later that day during jury selection, just after the lunch recess, Parker's counsel asked permission for Parker to pass a note to his wife, which prompted a reprimand from the trial judge:

> Ms. SHARKEY [Trial Counsel]: Can Mr. Parker hand a piece of paper to his wife?
>
> THE DEFENDANT: It came from you.
>
> THE COURT: Parker, sit. You're not in the street. Act like a decent citizen and comply with the rules of the Court. Your objection?
>
> MR. DEINGENIIS [The Prosecutor]: My objection is it's well documented now that this defendant poses threats to our witnesses. That's, in addition to the person Cynthia Hickson, it is our belief upon our investigation and Police Department investigation that she has smuggled things in and out of jail for the defendant. Whatever he's handing her, whether he wants to say it's from us or whatever it's a security risk.

> THE DEFENDANT: Your Honor, everything in regards to what he's talking about, whether it pertains to her is information about actually her. If she was smuggling things in and out of the Correction Department, she would have gotten arrested.
>
> THE COURT: Your application to passing the piece of paper in the courtroom is denied. You're making a great record on your own. She can stay here, that lady. She can stay here if she wants. If she left on her own, it's okay.
>
> (Wife enters the courtroom.)
>
> (Jury enters the courtroom.)
>
> All right, welcome back from lunch, ladies and gentlemen.

*Id.* at 123-24. The trial transcript does not clearly indicate when, if at all, Parker's wife was in fact excluded from the room, and at what point she was allowed to return. The affidavit of Appellate Counsel David P. Greenberg references an affidavit of Parker's wife, attached to Parker's *coram nobis* motion as Exhibit 4, in which she alleges that she was absent and not allowed back until after the lunch recess. *See* Greenberg Aff. ¶ 11. The affidavit of Parker's wife was not included in the State's response to my October 16, 2014 Order to Show Cause, but as described, it would be corroborated by the transcript entry "(Wife enters the courtroom.)" which occurred just after the lunch recess. *See* Voir Dire Minutes of Apr. 28, 2009 at 124.

However, as with the ineffective summation claim, the closure of the courtroom is nonetheless apparent from the face of the record, and should have been raised in Parker's direct appeal. Parker failed to raise the objection in either his counseled appellate brief or his *pro se* submission to the Appellate Division. Pet. at 11. As a result, Parker's claim is now procedurally barred from habeas review, as the court's denial relied upon an independent and adequate state law ground — *i.e.*, Parker's failure to comply with New York rules requiring that on-the-record

claims be raised only on direct appeal, and not in collateral proceedings. *See Clark*, 510 F.3d at 393; *Sweet*, 353 F.3d at 140.

Once again, determining that the claim is procedurally barred does not end the inquiry. As noted above, federal review is permissible if the petitioner can demonstrate: (1) cause and actual prejudice, or (2) that failure to consider the claim would result in a fundamental miscarriage of justice. *See Coleman*, 501 U.S. at 750.

Ineffective assistance of trial counsel can establish the cause required to overcome the procedural bar to a separate federal claim. *See Murray*, 477 U.S. at 488. However, this ineffective-assistance-of-counsel claim can itself be procedurally defaulted, and if this is the case, it cannot be asserted as cause to overcome the procedural default of another federal constitutional claim. *Edwards*, 529 U.S. at 453. In other words, if a petitioner failed to fairly present his claim of ineffective assistance to the state courts, he is not permitted to argue that this ineffective assistance constituted cause.

That is precisely what happened here. Though Parker raised the issue of the ineffective assistance of counsel in his first § 440 motion, his objections pertained solely to trial counsel's ineffective summation. *See* ECF No. 5-1 at 7. He made no mention of trial counsel's failure to object during the voir dire proceeding. As a result, the New York Supreme Court considered the claim before it to be that Parker was denied the effective assistance of counsel because his stand-by attorney "never argued, during her summation, that the defendant acted in self-defense." First § 440 Decision at 1. Parker's second § 440 motion contained no objection to trial counsel's performance with respect to the courtroom closure. *See* ECF No. 5-2 at 78-88. And while Parker, in his third § 440 motion, challenged the courtroom closure, he did not claim

that his trial counsel erred in failing to object to it.[6]  Thus, I conclude that this claim is procedurally defaulted.

There is another basis for denial of habeas relief on this claim.  Trial counsel's decision in 2009 to not object to the closure of the courtroom occurred before the Supreme Court established that a defendant's Sixth Amendment right to a public trial included the right to a public voir dire proceeding.  *See Presley v. Georgia*, 558 U.S. 209 (2010).  Parker's ineffective assistance claim is thus without merit.

A court deciding an ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.  *Strickland v. Washington*, 466 U.S. 668, 690 (1984).  A defendant must show that counsel's representation "fell below an objective standard of reasonableness" based on "prevailing professional norms" <u>and</u> that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 688, 694.  "Judicial scrutiny of counsel's performance must be highly deferential."  *Id.* at 689.

It is not clear whether trial counsel should have known, pre-*Presley*, that Parker possessed a Sixth Amendment right to a public voir dire proceeding.  Parker relies on *Waller v. Georgia*, 467 U.S. 39 (1984), and *Press-Enterprise Co. v. Superior Court of California* ("*Press-Enterprise I*"), 464 U.S. 501 (1984), to assert that counsel's failure to object fell below the *Strickland* standard.  However, the Supreme Court held in *Waller* that a defendant's Sixth

---

[6]      In pertinent part, the third § 440 motion reads, without alteration, "Defendant Lawyer did not make any objections as Lawyer showed in People v. Martin 925 N.Y.S.2d 400  Since defendant can not file a motion under ineffective counsel because defendant tried on first 440.10, being that facts do appear on record there is not indication that this issue is preserve for appellate review Since Appellate Courts requires preservation on issues brought to surface for their Review!  Defendant claim has merit and said judge assigned to this motion should view this motion with sincerity and respect for a person civil rights!"  ECF No. 5-3 at 48.

Amendment right includes the right to a public pre-trial suppression hearing, but the holding did not expressly extend to voir dire or other pre-trial proceedings.

Later, the *Presley* majority declared that under the Court's then "clear precedents," it was "so well settled that the Sixth Amendment right to a public trial extended to jury voir dire that the Court could proceed by summary disposition." 558 U.S. at 209, 213; *but see id.* at 219 (Thomas, J., dissenting) (noting that petitioner Presley "did not seek summary reversal based on the allegedly incorrect application of this Court's well-established precedents . . . , but instead asked [the Court] to 'resolve [a] split of authority'"). But trial counsel did not have the benefit of *Presley*'s clarification, and both before and after *Presley*, the lower federal courts have debated the clarity of *Waller* and *Press-Enterprise I* with respect to voir dire proceedings. *Compare Edelkind v. United States*, No. 05-CR-60067, 2010 WL 2944369, at *7-8 (W.D. La. June 28, 2010) (rejecting ineffective-assistance claim based on appellate counsel's failure to challenge exclusion of the public during voir dire because *Presley* "was decided long after [defendant] was tried" and "[w]hether the performance of counsel was deficient is based upon the law as it existed at the time of trial"(internal quotations omitted)) *and Vaughn v. Romanowski*, No. 13-CV-13436, 2014 WL 6632471, at *5 (E.D. Mich. Nov. 21, 2014) ("Because Vaughn's counsel at the time of his 2003 trial may have reasonably questioned whether Vaughn had any constitutional right to an open courtroom during voir dire, counsel was not ineffective for failing to object to the closure of the courtroom during voir dire.") *with Constant v. Pennsylvania Dep't of Corr.*, 912 F. Supp. 2d 279, 297-303 (W.D. Pa. 2012) (granting habeas petition with respect to pre-*Presley* trial on grounds that closing voir dire proceeding violated Sixth Amendment right to public trial clearly set forth in *Waller* and *Press-*

*Enterprise I*); *see also Barrows v. United States*, 15 A.3d 673, 678 (D.C. 2011) (finding pre-*Presley* closure of voir dire a "plain error" at time of appellant's trial).[7]

Given the highly deferential standard of *Strickland* and in view of Supreme Court precedent at the time of Parker's voir dire proceeding, I cannot conclude that trial counsel's failure to object denied Parker effective assistance. I also note that trial counsel may have refused to object for strategic reasons. The trial transcript indicates that, later in the voir dire proceeding, Parker attempted to pass a note to his wife, which prompted a reprimand from the judge. As appellate counsel observed in response to the *coram nobis* application, trial counsel may have concluded that the presence of Parker's wife in the courtroom was an unnecessary distraction, and thus did not object to her temporary exclusion. *See* Greenberg Aff. ¶ 11.

b.    *Coram Nobis Motion*

On June 25, 2013, Parker moved *pro se* in the Appellate Division for a writ of error *coram nobis*, claiming that he was denied the effective assistance of appellate counsel because his attorney did not raise the courtroom closure issue, and because appellate counsel did not argue that trial counsel was ineffective for not objecting to the voir dire procedure. *See* ECF No. 5-3 at 54-77. The Appellate Division denied the petition on the merits, holding without further explanation that Parker had "failed to establish that he was denied the effective assistance of appellate counsel." *People v. Keenan Parker*, 114 A.D.3d 883 (2d Dep't 2014).

To establish a claim of ineffective assistance of counsel, a petitioner must show (1) that his counsel supplied deficient representation, and (2) that the petitioner suffered

---

[7]    In a case on direct appeal, which was decided after *Presley*, the Second Circuit reversed a conviction due to the district court's intentional, unjustified closure of the courtroom for the entirety of pre-*Presley* voir dire on March 24, 2008. *United States v. Gupta*, 699 F.3d 682, 690 (2011). In *Gupta*, the district court had requested that individuals who were not in the venire panel leave the courtroom to "accommodate the large numbers of jurors in the *venire* panel." *Id.* at 686. The Second Circuit roundly rejected this post-closing justification. *Id.* at 690.

prejudice as a result of that deficient performance. *See Strickland*, 466 U.S. at 687-88. To establish deficient performance, the petitioner must show that "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. "The challenger's burden is to show 'that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.'" *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quoting *Strickland*, 466 U.S. at 687). To establish prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

The Appellate Division decision is also entitled to deference under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). A federal court may grant habeas relief "with respect to a[] claim that was adjudicated on the merits in State court proceedings" only if the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).[8] AEDPA's deferential review applies whenever a state court disposes of a state prisoner's federal claim on the merits, regardless of whether it gives reasons for its determination or refers to federal law in its decision. *See Sellan v. Kuhlman*, 261 F.3d 303, 312 (2d Cir. 2001).

The combination of the AEDPA and *Strickland* standards creates a high bar for habeas petitioners. As the Supreme Court has explained,

> The standards created by *Strickland* and § 2254(d) are both highly
> deferential and when the two apply in tandem, review is doubly so.
> The *Strickland* standard is a general one, so the range of reasonable

---

[8]     This limitation on relief is frequently referred to as "AEDPA deference." *E.g.*, *Cullen v. Pinholster*, 131 S. Ct. 1388, 1410 (2011); *Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010); *Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003).

> applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Harrington*, 562 U.S. at 105 (internal quotation marks and citations omitted); *see also Williams v. Taylor*, 529 U.S. 362, 411 (2000) ("[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable."). To establish the required "reasonable probability" that counsel's errors changed the outcome of the case, the petitioner must show not just "some conceivable effect," *Strickland*, 466 U.S. at 693, but rather "a probability sufficient to undermine confidence in the outcome." *Id.* at 694; *see also Alexander v. Ercole*, No. 06-CV-3377 (JG), 2008 WL 365401, at *5 (E.D.N.Y. Feb. 11, 2008) (citing *Strickland*).

In this case, it was not unreasonable for the state court to conclude that appellate counsel satisfied *Strickland*'s low standard. The exclusion of Parker's wife was unpreserved for appellate review, and while appellate counsel could have requested that the Appellate Division reach the unpreserved claim in the interest of justice, *see* N.Y. CPL § 470.15(6)(a), he also could have reasonably concluded that such a claim was unlikely to succeed. *See People v. Borukhova*, 931 N.Y.S.2d 349, 372-73 (2d Dep't 2011) (defendant failed to preserve claim under *Presley* that her right to a public trial was violated when the trial court temporarily excluded members of her family from the courtroom during portions of the voir dire because of limited seating for prospective jurors; Appellate Division declined to review claim in the exercise of its interest of justice jurisdiction), *lv. denied*, 18 N.Y.3d 881 (2012).

3.     *Changed Theory of Prosecution/Constructive Amendment of the Indictment*

Finally, Parker asserts that because the prosecutor referred to the use of two guns in his opening statement, but only one gun was mentioned to the Grand Jury, the State impermissibly changed the theory of prosecution.  Pet. at 6.  In a related claim, he argues that the trial court improperly amended the indictment, "with a weapon defendant was not charged with at the Grand Jury."  Pet. at 7. [9]  In his *pro se* appellate brief, Parker contended that even though he was not convicted of the weapon possession count, the jury should not have been "privy" to any offense that was not charged in the indictment.  *See* ECF No. 5-2 at 61.

In a one-sentence ruling, the Appellate Division held that Parker's contention raised in his *pro se* brief was "academic."  *People v. Parker*, 938 N.Y.S.2d 444 (2d Dep't 2012).  This is presumably because the jury never reached the weapons possession count in its deliberations.  The trial court submitted to the jury a single count of second-degree criminal possession of a weapon, *see* Tr. 574-76, but instructed the jury that if it convicted Parker of second-degree murder or the lesser-included offense of first-degree manslaughter, it was to stop deliberating and report its verdict.  Tr. 570-582.  Thus, because the jury found Parker guilty of murder, it never considered the weapon possession count.  Tr. 597.

Parker's assertion that the prosecutor or the court illegally amended the indictment and changed the theory of prosecution fails to set forth a cognizable basis for federal habeas relief.  It is true that in federal criminal cases, when an indictment is amended outside the grand jury process, it constitutes a *per se* violation of the Fifth Amendment right to be indicted by a grand jury.  Such a violation would "require reversal even without a showing of prejudice to

---

[9]     Constructive amendment claims are also embedded within Parker's ineffective assistance claim. *See infra* Section B(2).  In that section of the petition, Parker contends that the prosecutor, by consenting to the defense's request to charge justification, "clearly changed the theory from the grand jury of intentional murder." Pet. at 9.  Accordingly, a mistrial should have occurred resulting in the case being "sent back to the grand jury."  *Id.*

the defendant." *United States v. Clemente*, 22 F.3d 477, 482 (2d Cir. 1994); *see also Stirone v. United States*, 361 U.S. 212, 217 (1960).

However, the Fifth Amendment's right to a grand jury indictment has not been incorporated against the states through the Fourteenth Amendment, and thus does not work to limit state prosecutions. *See LanFranco v. Murray*, 313 F.3d 112, 118 (2d Cir. 2002) (citing *Branzburg v. Hayes*, 408 U.S. 665, 688 n.25 (1972)). Accordingly, Parker's claim that the indictment was improperly amended may not be considered on habeas review. *See Player v. Artus*, No. 06-CV-2764 (JG), 2007 WL 708793, at *7 (E.D.N.Y. Mar. 6, 2007).

Even assuming, *arguendo*, that constructive amendment of the indictment were subject to habeas review, the claim still would fail on the merits. In the federal system, a constructive amendment arises when the State's proof and the trial court's jury instructions "modify essential elements of the offense charged to the point that there is a substantial likelihood that the defendant may have been convicted of an offense other than the one charged by the grand jury." *United States v. Vebeliunas*, 76 F.3d 1283, 1290 (2d Cir. 1996). In this case, the Grand Jury found that Parker intentionally killed Sumpter with a firearm; the State's trial evidence proved that Parker intentionally killed Sumpter by shooting him with two firearms; and the trial court's jury instructions reflected those theories of liability and relevant crimes: murder, manslaughter, and criminal possession of a weapon (charged in the alternative). Thus, Parker was convicted of the offense charged by the Grand Jury — the murder of Sumpter. *See id.*

Moreover, there was no unconstitutional variance between the terms of the indictment and the facts proved by the evidence at trial. A variance in an indictment occurs when "the charging terms of the indictment are left unaltered, but the evidence offered at trial proves facts materially different from those alleged in the indictment." *United States v. Thomas*,

274 F.3d 655, 670 (2d Cir. 2001) (internal quotation marks omitted). To prevail on a variance claim, a defendant must demonstrate substantial prejudice. *Id.* For killing Sumpter, the Grand Jury charged Parker with one count of Murder in the Second Degree in that, on or about September 13, 2007, in Brooklyn, Parker, "with the intent to [cause] the death of Lawrence Sumpter, caused the death of Lawrence Sumpter by shooting him with a deadly weapon, namely: a handgun, thereby inflicting various wounds and injuries upon Lawrence Sumpter, and thereafter on or about September 13, 2007, Lawrence Sumpter died of the wounds and injuries." Dolan Aff. ¶ 5 n.2. The State proved beyond a reasonable doubt that on September 13, 2007, in Brooklyn, Parker shot and killed Sumpter with two guns, intending to cause his death, and the shooting was not justified under state law. The trial court instructed the jury that in order to convict defendant of Murder in the Second Degree it had to find, beyond a reasonable doubt, "(1) that on or about September 13, 2007, in the County of Kings, the defendant caused the death of Lawrence Sumpter; (2) that the defendant intended to cause the death of Lawrence Sumpter; and (3) that the shooting of Lawrence Sumpter was not justified, as I [the trial court] have explained that concept to you." Tr. 570. Thus, there was no variance between the indictment and the proof offered at trial. *See Afrika v. Conway*, No. 06-CV-0280T, 2011 WL 582618, at *14-15 (W.D.N.Y. Feb. 9, 2011); *Epps v. Poole*, No. 07-CV-3432, 2010 WL 1991517, at *8-9 (E.D.N.Y. May 14, 2010), *aff'd*, *as amended* 687 F.3d 46 (2d Cir. 2012).

Nor can Parker maintain that the State changed its theory of criminal liability. While the indictment must provide a defendant with notice of the core of criminality to be proven at trial, the prosecution must be permitted significant flexibility in the nature of the proof adduced at trial. *See United States v. Wozniak*, 126 F.3d 105, 109 (2d Cir. 1997); *see also United States v. Heimann*, 705 F.2d 662, 666 (2d Cir. 1983), *cert. denied*, 466 U.S. 962 (1984) ("[P]roof

at trial need not, indeed cannot, be a precise replica of the charges contained in an indictment."). In this case, the indictment provided appropriate notice of the "core of criminality" that the prosecution intended to prove at trial — that Parker shot and killed Sumpter without any legal justification.[10]

## CONCLUSION

For the reasons stated above, Parker's petition is denied. A certificate of appealability shall not issue because Parker has not made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). I certify pursuant to 28 U.S.C. § 1915(a)(3) that any appeal of this Order would not be taken in good faith and, therefore, *in forma pauperis* status is denied for the purposes of any appeal. *Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

So ordered.

John Gleeson, U.S.D.J.

Dated: September 2, 2015
      Brooklyn, New York

---

[10] In addition, it is doubtful that Parker suffered prejudice from the two-gun theory in light of his trial testimony admitting that he used two guns to kill Sumpter, an admission that is restated in his petition. Pet. at 6 ("I admitted to having a 38 revolver;" "the deceased dropped his weapon during the shootout;" and "I picked it up and shot it at him [and] the deceased died from 9mm gun shot wound."); *see U.S. ex rel. Richards v. Bartlett*, No. 92-CV-2448, 1993 WL 372267, at *4 (E.D.N.Y. Sept. 9, 1993) (petitioner was not prejudiced by the additional trial proof because of his pre-trial knowledge).